## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

KAYLA L.S. HODGES,      )
                      )
         Plaintiff,   )
                      )
v.                     )   Case No. CIV-12-072-JHP
                      )
MICHAEL J. ASTRUE,     )
Commissioner of Social   )
Security Administration, )
                      )
         Defendant.   )

## REPORT AND RECOMMENDATION

Plaintiff Kayla L.S. Hodges (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 11, 1987 and was 24 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has no past relevant work. Claimant alleges an inability to work beginning August 1, 2009 due to limitations resulting from a wrist injury and mental health problems.

## Procedural History

On September 3, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On May 4, 2011, a video administrative hearing was held before ALJ Michael A. Kirkpatrick in McAlester, Oklahoma. On May 12, 2011, the ALJ issued an unfavorable decision on Claimant's applications. On December 14, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to fully and fairly develop the record; (2) failing to consider all of

Claimant's severe impairments; (3) engaging in an improper credibility analysis; (4) reaching an improper RFC determination; and (5) making inadequate findings at step five. Claimant also contends the Appeals Council erred in failing to consider certain new and material evidence which Claimant asserts demonstrates she functions on the border of intellectual mental retardation.

### Duty to Develop the Administrative Record

Claimant contends the ALJ failed to properly develop the record. In his decision, the ALJ determined Claimant suffered from the severe impairment of a mood disorder. (Tr. 25). The ALJ concluded, however, that Claimant retained the RFC to perform a full range of work at all exertional levels with the non-exertional limitation that she is restricted to performing simple, routine, unskilled tasks (but not detailed or complex tasks) that do not require interaction with the general public. (Tr. 26). Considering the testimony of the vocational expert, the ALJ determined Claimant could perform the representative occupations of hand packer, dishwasher, and assembler. (Tr. 32).

On February 25, 2009, Claimant attended the DeLia Medical Clinic for a psychiatric evaluation. She complained of a lack of energy, fatigue, increased crying, and depression. Claimant was diagnosed with bipolar I disorder, most recent episode depressed,

5

social phobia, and generalized anxiety disorder. Her GAF was estimated at between 50 and 60. Claimant was prescribed medication. (Tr. 403).

On April 25, 2009, Claimant again went to the DeLia Medical Clinic, seeking a refill of medication and an increase in dosage due to increased stress and sleep problems. (Tr. 407).

On September 14, 2009, Claimant went to the Sequoyah Memorial Hospital seeking mental health treatment. Claimant stated she was just released from jail and sought help to get into the Bill Willis mental health facility. She reported being suicidal with no plan, depressed, and agitated. (Tr. 310, 312).

On September 17, 2009, Claimant was evaluated at Creoks Behavioral Health facility. Claimant reported a domestic episode with her step father. She stated she had a trapped feeling with big mood swings and black outs. (Tr. 412). Claimant was diagnosed with major depression, recurrent - unspecified and/or mood disorder and borderline personality disorder. (Tr. 416).

On October 12, 2009, Claimant was evaluated at Bill Willis. She stated her relationship with her step father was violent and that she blows up easily and blacks out. She cries all of the time and can sleep all day and still sleep at night. She denied hallucinations. The physician changed Claimant's medication. (Tr.

397-98).

On December 3, 2009, Claimant underwent a consultative psychological evaluation with Dr. Patricia J. Walz. Claimant reported being depressed, sitting in her room crying a lot, not wanting to do anything or be around people. She reported prior suicidal ideations but not recently. (Tr. 372). She stated she was fired from her last job when she got upset with a coworker and started screaming and yelling at her. (Tr. 373). Claimant stated she had erratic sleep patterns with a low energy level. (Tr. 374).

Dr. Walz found Claimant was cooperative, had a slightly sad mood, a flat affect, clear and intelligible speech, logical and goal oriented thought processes, thoughts were notable for suicidal ideation as recently as four months prior, reported no hallucinations, and reported difficulty concentrating. Dr. Walz estimated Claimant's intellectual functioning in the 75 to 85 range. (Tr. 375). Her differential diagnosis was bipolar I disorder, most recent episode depressed, intermittent explosive disorder, rule out borderline intellectual functioning, and a GAF of 40-45. (Tr. 376). Claimant demonstrated impaired social skills, mild short term memory impairment, and slow information processing. Id. Dr. Walz recommended IQ and achievement testing. (Tr. 377).

On January 20, 2010, Dr. Janice B. Smith completed a Mental Residual Functioning Capacity Assessment form on Claimant. She determined Claimant was markedly limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. (Tr. 378-79). Dr. Smith concluded that Claimant "can perform simple tasks with routine supervision and can adapt to a work situation. She can relate to supervisors and peers on a superficial work basis. Claimant cannot relate to the general public." (Tr. 380).

Dr. Smith also completed a Psychiatric Review Technique form on Claimant. She found Claimant suffered from a depressive syndrome marked by difficulty concentrating or thinking and thoughts of suicide. She also found Claimant a medically determinably impairment in the form of a mood disorder. (Tr. 385). Dr. Smith found Claimant was moderately limited in the functional areas of activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace. (Tr. 392).

On March 26, 2010, Claimant was again evaluated at Creoks. She continued to suffer from major depressive disorder, recurrent, severe, and borderline personality disorder. Her GAF was estimated

8

at 60. (Tr. 421-23). Claimant demonstrated problems in concentration, impulse control, judgment, depression, social interaction, and withdrawal. (Tr. 424-28).

Claimant argues that the ALJ should have obtained a medical source statement from Dr. Walz so that she could comment on areas of functioning. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). Further, the "ALJ has a basic duty of inquiry, 'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts.'" Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir. 1993). The ALJ is required to ask enough questions to ascertain "'(1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment

on a claimant's daily routine and activities.'" Id. Additional testing and consultative evaluation may be required if the medical evidence is in conflict or is inconclusive. Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997); 20 C.F.R. § 404.1519a(b)(4).

Nothing in the record gives rise to a conflict such that additional testing was required. Functional evaluation was achieved through other medical professionals and the ALJ did not shirk his duty by failing to order such medical source statements from Dr. Walz.

Claimant also contends the ALJ should have ordered an additional consultative physical examination with regard to her wrist. Claimant suggests the ALJ should have obtained medical records from Dr. Martimbeau who Claimant was to see after her injury. Claimant could certainly have obtained these records and placed them before the ALJ. Moreover, Claimant appears to assert that the ALJ has a duty to investigate all of her conditions, regardless of the lack of evidence demonstrating that the condition has any effect upon Claimant's ability to engage in work activities. Based upon the lack of evidence of such an effect, this Court does not find the ALJ erred in failing to order an additional consultative physical examination.

Similarly, this Court finds no error in failing to obtain

Claimant's school records or to order additional IQ and achievement testing. The record is replete with information concerning her IQ and functional ability. Additional testing in this regard would have merely been redundant.

## Consideration of Impairments

Claimant next contends the ALJ should have included her wrist injury as a severe impairment, essentially concluding the "[I]t is logical to assume" that functional limitations with grip strength and manipulation would result. Nothing in the record would indicate such a limitation. The ALJ did not err in failing to consider this impairment.

Claimant also states the ALJ should have found other severe mental impairments based upon diagnoses stated in the various medical reports. The fact a condition has been diagnosed does not translate into a disability. *See*, Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995); Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988). The ALJ adequately included all conditions resulting in disability at step two.

## Credibility Analysis

In his credibility analysis, the ALJ employs the oft-used phrase that Claimant's statements which are inconsistent with the ALJ's RFC finding are not credible. Admittedly, this statement,

whatever its origin, is flawed and somewhat nonsensical and should be eliminated from all of the ALJs' boilerplate language utilized in their decisions. The ALJ, however, makes sufficient linkage between his findings on credibility and the medical record to satisfy his obligation. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board);

and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). This Court finds no error in the ALJ's credibility findings.

### RFC Determination

Claimant repeats many of her prior arguments which have been rejected by this Court in objecting to the ALJ's RFC findings. Claimant contends the ALJ should have included her wrist problems in his assessment. As stated, it was not error to omit this condition as a severe impairment as no limitations in the ability to engage in work-related activities have been demonstrated.

Claimant also contends her mental limitations were understated by the ALJ. As set forth previously, the mental limitations are adequately addressed in light of the medical record.

### Step Five Findings

Claimant also argues the ALJ should have included additional limitations in his hypothetical questioning of the vocational expert. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot

constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). The ALJ's questioning reflected Claimant's medically determined limitations.

## Consideration of New Evidence

Claimant also states the Appeals Council should have considered a report of Dr. Robert Spray dated July 13, 2011 which found Claimant suffered from "mild mental retardation." The report does not relate to Claimant's condition on or before the period to be considered by the ALJ or the Appeals Council. Accordingly, it was not error for the Appeals Council to decline to consider this later report. *See*, Wall v. Astrue, 561 F.3d 1048, 1064 (10th Cir. 2004).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore,

the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 4th day of January, 2013.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE